Good morning, Your Honors. David Zucman on behalf of Appellant Hector David Manriquez. I would like to reserve a couple minutes for rebuttal. Your Honors, I think this case divides easily into the procedural and substantive issues, and I'll address them in that order. The procedural issue I think is pretty straightforward. When Mr. Manriquez filed his habeas petition, he described his claim about the admission of Rojas and Perez's as just being error on this record. He did not identify any body of law upon which the admission was violative. The district court, and through the lens of the magistrate judge, decided that it must have been that he was just making a state law claim, that because his original opening brief on direct appeal said this violates California Evidence Code 1291, that must be the same claim he's raising in his federal claim. And that's just wrong. I mean, when you have a pro se petitioner, which Manriquez indisputably was, you're supposed to read it with a more liberal reading. Well, we are liberal, but isn't there something beyond liberality you seem to be arguing for? Because here he clearly didn't raise the claim in the state court. We know that. Everybody agrees. He didn't raise any federal or state constitutional claim. When he came to the district court, he also didn't really raise a constitutional claim. Indeed, he used precisely the language that we use in the state court to describe his claim, was used in the district court, precise language. When the state responded and said, look, this is just a state claim, he didn't say, whoa, no, no, no, no, I'm making a constitutional claim. When the magistrate judge said, this is just a state claim, he didn't say, no, no, no, I'm making a federal constitutional claim. The court rules he didn't even ask for a COA on this issue at all. We, in our wisdom, somehow granted a COA on an issue that wasn't asked for. Never mind that, we did it. How do we say, oh, well, he was really raising a federal constitutional claim? Well, that seems pretty simple to me. I mean, it seems to me that. Yes. I mean, of course it seems simple to me. Well, I mean, it seems to me like if a prisoner were to say, look, I've been tortured, you could say, well, are you making a federal claim or a state claim? Or you're admitting evident, you know, an involuntary confession against me. Are you making a federal claim or a state claim? When you say, look, you're admitting out-of-court statements which were given under both at a previous examination, I mean, the first thing that jumps into my mind is Crawford. I mean, I don't see how else you could read it. That brings me to another question, which is in view of Wharton v. Spockting, which now holds that Crawford cannot be applied retroactively, I'm not sure what difference any of this makes, because as I read your argument, it has never been that the statements were unreliable in the old Ohio v. Roberts sense, but rather to be a request that is applied retroactively, and we now know that it isn't. Right. I mean, it is true that I went big on Crawford in my opening brief. But in my reply brief, I did identify – I mean, I also cited Ohio v. Roberts in the opening brief. And I think that actually this will be the narrow type of case which will satisfy both frameworks. In Crawford, of course, the only testimony that – I'm sorry, the only statements that the Confrontation Clause reaches are those that are testimonial. Now, of course, you don't use the Crawford test to determine whether it's a constitutional violation. It seems to me that you have a two-part analysis now for determining whether someone can raise a pre-Crawford Confrontation Clause claim. Number one, they have to – the statements have to be testimonial. If they're not testimonial, then there's simply no constitutional issue. Second, once they're determined to be testimonial, you then determine under the Ohio v. Roberts framework whether they're reliable or not. And I pointed out in my opening brief and in my reply that the reason that these weren't reliable was that when Mr. Manriquez made the great decision to call these witnesses at the preliminary hearing, he couldn't go after those witnesses as being the actual killers. That was the obvious defense that anybody who was thinking about the case would have gone after, which is they know all these details, they were with them, they were the killers, not me. There's not a single case, Supreme Court case particularly, that says that there's a distinction between an opportunity and a desire. There are certain cases that suggest that, well, you have to have the same kind of motive to do it. But that was a case relying on the federal evidence code and not a case relying on a single case out there says where you have the opportunity. And indeed, he not only had the opportunity, he did it to a fairly well. You're saying that any reasonable person would have said they were the killers. Maybe so. But that's not how he thought about it tactically. He thought any reasonable person would show these guys are a couple of great, big, fat liars is what they are, that's all. And they never did it and they were coerced and they agreed that I didn't have anything to do with it. So he put the whole thing on at preliminary hearing. Maybe he didn't have to and what would have happened if he had done nothing? That's up in the air, but he sure did a lot. Right. I guess my answer to Your Honor's first part is O'Hire v. Roberts is actually the case which involves preliminary hearing testimony. And the Supreme Court in that case said, look, even though this guy called him on direct, it was just like a cross. He was using leading questions. He was going after the witness. The only difference, it had all the trappings, I believe, was the word the Supreme Court used. And that's what differs between Mr. Manriquez's case and O'Hire v. Roberts is that this didn't have the trappings. There were no trappings. It was completely set free. What trappings? If the state had put those guys on first, the class examination would have been, aren't you guys big, fat liars? Isn't it true that you were coerced, et cetera, et cetera? There's a beautiful cross-examination. He didn't need to do that. He'd call him on direct. What difference does cross-examination make vis-à-vis direct examination that elicits a tremendous amount of what would be cross-examination material? Well, that's true, although, you know, it gets past the fundamental problem, which is, you know, there is a line of defense which he could not pursue, which was the only logical possible. Of course he could pursue it. He didn't choose to. He said, tactically, it would be much smarter for me to get these guys on my side. That's what he said. But then he couldn't pursue it. Well, it's true that no one held him down and prevented him from pursuing it. He could have. Of course no one held him down. He made a tactical decision that approach A was a much smarter approach than approach B. Right. And the only time when judges review that is when the tactical decision is completely moronic, as it was in this case, where it was completely deleterious to his actual defense. The actual defense could have been, should have been, and had to be these guys are the killers. The, you know, didn't you guys just lie to the police? I mean, I don't, I cannot for the life of me understand why any competent defense attorney would call these folks because all you're doing is ensuring that those statements could be admitted at trial. That's all you were doing under the old law. There's no way you're winning the preliminary hearing. No one could say that. So it just doesn't make sense. So that's the essence of my, I think Your Honors understand my position. I see I have two minutes left. I'd like to reserve them. You certainly may. Thank you. And we'll hear now from the warden. Good morning. May it please the Court. Felicity Sanofsky, Deputy Attorney General for the State of California. Speak a little louder, please. My name is Felicity Sanofsky. I'm with the State for Respondent Anna Pelley. My focus today really is on the procedural aspect of this case. I don't believe we get to the merits. We don't get to the issue of Ohio v. Roberts. Specifically because in order to make the jump to the merits in this case, we really, really have to stretch the procedural background. The operative principle, as Justice Hernandez points out, is that it was petitioner's burden to raise the claim. It was petitioner's burden to raise the claim. It was petitioner's burden to raise the claim. He did not do that in the state court. He did not do that in the federal court. He did not do that when he had the opportunity to file a traverse. He did not clarify. And as also was pointed out, he didn't even do it in the COA. He basically abandoned the claim. Don't our cases, though, say that we have a duty to construe a pro se petitioner's brief liberally? The notion of liberally construing petitioner's claims does not fit this case, because in this case, in order to do that, the court would be advocating on the behalf of the petitioner. The court would be saying, here's a claim, or here's grounds, not stated either way. We're in Federal court, so we're assuming there has to be some sort of Federal basis. But without the explicit statement on the part of the petitioner, the district court is put in the position where it's not only having to research and determine what the Federal constitutional claim is, but also frame it for a petitioner. That's advocacy. That puts the impartial decision-making body in a position where it's advocating on behalf of petitioner and acting as his paralegal or her paralegal and advising. And is that beyond what we did in Zisko, where the court identified a claim that hadn't been expressly stated by the petitioner, the pro se petitioner? In Zinko, Zisko, in that case, there was no issue of a Federal question to begin  And effective assistance of counsel. Exactly. So what the court was able to do in that case is look at the ineffective assistance of counsel claim and relate whether the attorney's failure to communicate was associated with the IAC claim. So from the get-go, there was no issue of whether a Federal question was presented. Likewise, likewise, I'd like to point out in Hayes v. Arave, footnote 1, the court discusses, and I believe this is an opinion where Justice Fernandez joined, and it was authored by Justice Reinhart. In footnote 1, the court points out that the petitioner was raising a right-to-be-present claim at his sentencing hearing and had not expressly raised a Sixth Amendment right-to-counsel claim. However, the court was able to say, we're construing this petition liberally and we're looking at it. For the Sixth Amendment right-to-counsel claim, we're able to associate and relate that back to the right-to-be-present claim. So in that case ---- If I recall, that footnote was almost a throwaway. It was. The case didn't really deal with the issue. It didn't. And the footnote was there, I believe, because the government did object. The court was responding to the government's objection that there was no Federal question raised with respect to the Sixth Amendment right-to-counsel claim. And what the court did is said, well, we can relate this claim. We can legitimately relate this claim back to the right-to-be-present claim, which was raised by the petitioner. And in addition to that, the district court did deal with it and wrote on it and rejected it. And beyond that, we don't even reach the claim in this case because it's disposed ---- the case is disposed on other ---- on another ground. So when we're talking about this notion of liberally construing Petitioner's claims, at least in those cases where Federal questions are presented, we can say well, or this court is able to say, well, this claim is related. It's directly encompassed and tied in with the Federal question that is raised by the petitioner. In our case here, Manrique's failed, absolutely failed at every stage of the game to present a Federal question. I'm curious about something that's maybe a side issue, a tactical kind of issue. We granted a COA on this issue that was never asked for, and the State didn't complain about that. Is that just tactics or dismissal? You know, I did notice that when I went back and read the COAs, both in the district court and in this court, the claim was abandoned by Petitioner. And this case, to be quite honest, was a handoff to me. So I did not handle the briefing from the beginning. I was just curious. I went back and read 2253 to try to figure out how we got here. And I guess if we want to employ liberal reading of papers, that's one way to do it. I don't know why the lead attorney on this case didn't object to it. So in getting back to the procedural argument, the main point I'd like to make today before Your Honors is that Manrique's position just takes it too far. And the fallout from that position is this. As I've already stated, it's his burden under the ADEPA to raise the federal constitutional claim. He must state the factual and federal legal grounds for his claim in order to obtain habeas relief. And I'd like to point out that the district court, although it did dispose of the claim on state law grounds, it indicated that the claim was not cognizable in that it had not been raised. That was clear. That was made very clear. Why the court went through the exercise of tracking the reasoning of the state court and going through the state law, I don't know. But the court did make it clear that the claim was not cognizable on federal habeas. Secondly, construing the pleading as liberally as Petitioner would like the court to do today puts the court in the position of acting as an advocate. And that completely does violence to the entire system. It doesn't make any sense. It just takes it too far. There's one other case that I'd like to point out before I conclude today. And I think the Plyler case really makes the point. And that case was the United States Supreme Court reversed this court on the warnings that the Ninth Circuit wanted to impose in the context of the statute of limitations in federal habeas. And again, Justice Breyer ---- Sotomayor, this is somewhat different, because in that case, the question was whether the judge had an affirmative obligation to advise the person directly. This has more to do with how to read the papers that have already been presented by the prisoner, which seems to me analytically quite different. You have here the claim directly above this one clearly is stated to be constitutional error, and then this sentence follows the trial court in admitting these out-of-court statements. And the question here is just how do we read this in context, which is quite a bit different than the Plyler situation where we were demanding a particular recitation and advice akin to, you know, Rule 11 kind of colloquy. That's exactly the parallel that I draw between our case here and the Plyler case. Well, I don't see that, because the question is how to understand this piece of paper. What should the district judge do, and what should we do when we're faced with this piece of paper, which is quite a bit of a different question, I think. The parallel that I saw with Plyler was that the bottom line in that case, I understand that procedurally the cases are different and the questions are different, but the decision-making body in the position like an advocate is improper. Well, reading this one way or another is not a matter of advocacy. I guess that's what I'm getting at. Figuring out what a person ought to do next, which is what Plyler was about. What are your options now? What choices should you be making? That's advice. Looking at this and figuring out what it means is judge work, it seems to me. I think the problem with looking at a claim that does not state the Federal constitutional deprivation of rights, the Court is put in the position of if it wasn't — I don't want to say that the claim here was self-evident, but for the purposes of argument, let's say the claim is self-evident. This may be a simpler case. However, what about the case where it's not entirely self-evident? The Court is put in the position of where is the Federal constitutional deprivation? Okay, so then we turn to, well, do we need to research this claim? Then the Court has to frame the claim for the petitioner. I mean, those acts sound to me like acts of a lawyer acting on behalf of a petitioner rather than the claim being brought to the Court in the first instance and then having the Court evaluate the position of the petitioner. Thank you. You have exceeded your time, and I think we understand your position. And my concluding remarks would be that it stretches the liberal construction — the notion of liberally construing the brief stretches too far in this case, and he did not raise a Federal claim. He's not entitled to relief in Federal court. Thank you. Thank you. Just a couple of quick points, Your Honors. You know, I may not be right about much in this case, but I am right that the Respondent is taking a contradictory position in that when the judge got the habeas and said, well, this is a State law claim, and I'll resolve it on State law grounds, which was entirely fictive, and Respondent said, yeah, and it's unexhausted. If it's unexhausted, it has to be a Federal claim. You don't have unexhausted State claims. They were — Respondent was saying, look, it's unexhausted, so that is implicitly recognizing that there could be, should be, perhaps is a Federal issue. Was it exhausted? Of course not. It wasn't even close to exhausted. The State opening brief was a State law claim, and he didn't include it in his petition for review. There's no question it was unexhausted. But it also seems clear to me that, you know, the magistrate judge here, Jennifer Lum, was a U.S. attorney for, I don't know, 15 years or something like that. And if you read, you know, the trial court erred in admitting out-of-court statements of Perez and Rojas to impeach their preliminary hearing testimony, and on this record, that ruling constituted error. That doesn't identify a body of law, but what else could that mean other than a confrontation case? Roberts. Well, if the district judge looked at the record, and I assume he can look at everything that's put before him when he's making a decision, he would have picked up the statement of the claim in the State court, which was precisely that, and then explicated as being a State law claim only. That's what he would have done. He would have looked at it and said, gee, what is that thing? Well, it's obviously the State claim restated. Yeah, but I think that the judge at that point would say, you know, that claim is you just can't raise a State claim in Federal habeas. And if it is a Federal claim, it is unexhausted. And I'm choosing not to state it because it's meritless, or I'm choosing to give you a chance to go to the State court exhausted, but it just can't be the answer that here's a State law claim, it's improperly resolved on State law grounds, and that's the end of the day. I mean, it's a Federal district court judge. It has to know that this is a confrontation issue. That's all I have. Thanks, Your Honor. Thank you, counsel. The case just argued is submitted.
judges: Fernandez, Graber, Ikuta